**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

Nos. 16-2436 & 16-3796

————————

RYAN FAIN, on behalf of himself and all others similarly situated,
Appellant

v.

USA TECHNOLOGIES, INC.; STEPHEN P. HERBERT; DAVID F. DEMEDIO;
JAMES DUNCAN SMITH.

————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cv-05427)
District Judge: Honorable Mark A. Kearney

————————

Argued on March 28, 2017

Before: AMBRO, VANASKIE, and RESTREPO, *Circuit Judges*

(Opinion Filed: August 30, 2017)

Adam M. Apton [ARGUED]
Levi & Korinsky
1101 30th Street, N.W., Suite 115
Washington, DC 20007

Jacob A. Goldberg
Rosen Law Firm
101 Greenwood Avenue
Suite 440
Jenkintown, PA 19046

*Counsel for Appellant*

M. Norman Goldberger [ARGUED]
Laura E. Krabill
Ballard Spahr
1735 Market Street, 51st Floor
Philadelphia, PA 19103

Evan W. Krick
Ballard Spahr
919 North Market Street, 11th Floor
Wilmington, DE 19801

*Counsel for Appellees*

_____

OPINION[*]

_____

RESTREPO, *Circuit Judge*

In this securities class action appeal, Plaintiff-Appellant challenges two Orders of the District Court, the first dismissing his putative securities class action complaint for failure to plead scienter, and the second denying him relief from that order under Federal Rule of Civil Procedure 60(b). For the following reasons, we affirm.

## I.

USA Technologies, Inc. ("USA Technologies") provides wireless networking, cashless transaction devices, asset monitoring, and other services to companies in the self-service retail market. In his Amended Class Action Complaint (the "Complaint"),

_____

[*] This disposition is not an Opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Plaintiff Ryan Fain, on behalf of a putative class of investors, alleges that USA Technologies and its individual officers, Stephen P. Herbert, David F. DeMedio, and James Duncan Smith (collectively with USA Technologies, the "Defendants") violated sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 and their implementing provisions. Specifically, Plaintiff alleges Defendants made materially false and misleading statements about the number and value of certain uncollectible customer accounts on the balance sheets, and the adequacy of internal accounting controls and compliance policies concerning the reporting of that data.

The basic factual allegations are straightforward. USA Technologies issued a press release on September 10, 2015 (the "September 10 Press Release") reporting an allocated "bad debt expense" of $47,184 for the fourth quarter of fiscal year 2015 ("Q4 FY2015") and $649,528 for FY2015 at year-end ("FY2015 year-end"). "Bad debt" refers to the subset of accounts receivable that, for whatever reason, are no longer collectible and therefore have to be written off. By recording a "bad debt expense" allowance on its balance sheet for doubtful accounts, a company is able to report a more accurate picture of the profitability of its sales. Given these bad debt allowances, the September 10 Press Release indicated that USA Technologies would report a net income of $68,999 Q4 FY2015 (although it would report a loss of $819,482 for FY2015 year-end).

Three weeks later, on September 29, 2015, USA Technologies filed a late filing notice indicating that it would have to delay the filing of its annual 2015 Form 10-K and amend its earlier September 10 Press Release because "management identified

3

deficiencies in both the design and operating effectiveness of the Company's internal control over financial reporting" (the "September 29 Late Filing Notice"). JA104 ¶ 94. Specifically, the September 29 Late Filing Notice disclosed that "[t]he procedures in place did not identify a large number of small balance accounts that may be uncollectible and were not appropriately dispositioned, collected, remediated, reserved for and/or written-off." JA104 ¶ 94. USA Technologies indicated, moreover, that it would amend its disclosures to include a $450,000 increase to its bad debt expense allocation.

On September 30, 2015, USA Technologies filed its annual Form 10-K acknowledging "material weakness" in its accounting procedures and restating its bad debt expense (the "September 30 Restatement"). JA104 ¶ 95–96. Per its disclosure the day before, the September 30 Restatement reported $479,184 in bad debt expense for Q4 FY2015 and $1,099,528 FY2015 year-end. As a result, the September 30 Restatement also adjusted downward its net income projections. In light of its increased bad debt allocations, USA Technologies reported that it would book a $201,001 loss (as opposed to a $68,999 profit) in Q4 FY2015 and a $1,089,482 loss (as opposed $819,482 loss) for FY2015 year-end.[1]

On November 13, 2015, Defendants Herbert and Smith offered comments on the September 30 Restatement during an earnings call to the effect that USA Technologies

---

[1] After this disclosure, shares of USA Technologies fell $0.28 on Sept. 30, 2015, and $0.11 on Oct. 1, 2015 (representing an approximately 14% loss over that 2-day period).

4

had "addressed and remediated the significant deficiency related to the amount of bad debt reserve attributable to the uncollected customer accounts." JA107 ¶ 101. Smith added that as a result USA Technologies planned on "changing the balance sheet classification in these uncollected accounts" moving forward such that the "[t]he uncollected customer accounts and the related allowance [would] no longer [be] reflected in accounts payable, where they [had] been reflected on consistent basis in all prior periods[, but would now be] reflected in accounts receivable." JA107-08 ¶ 102. This change in accounting practices was warranted because its uncollected accounts had "been outstanding for longer time periods and are larger in the aggregate that was anticipated in the accounting process [that] was established many years ago." JA107-08 ¶ 102.

Plaintiff then filed suit claiming that the September 10 Press Release was false and misleading in violation of the securities laws.[2] Plaintiff's claim is premised on two central allegations. First, he alleges that Defendants misled investors about the existence of "significant deficiencies" in USA Technologies' internal auditing and financial reporting procedures. JA70 ¶ 3. Second, he alleges that, as a result, Defendants misled investors about USA Technologies' reported net income by failing to identify and write off a "large number of uncollectible small-balance accounts." JA70 ¶ 3. Taken together,

---

[2] Although he focuses on the September 10 Press Release, we note that Plaintiff also alleges that other financial statements in USA Technologies' SEC filings, press releases and earnings calls from FY2015 were materially false and misleading because "[USA Technologies] was not accounting properly for its bad debt expenses." JA86 ¶ 51. Because these allegations hinge on the central claim that the September 10 Press Release was misleading, we too focus solely on that statement for purposes of this appeal.

the essence of his claim is that Defendants fraudulently understated the amount of "bad debt" on USA Technologies' balance sheets in order to artificially prop up USA Technologies' perceived financial health.

Defendants moved to dismiss the Complaint, and the District Court granted the motion on the ground that the Complaint failed to adequately plead scienter. To support his scienter claim, Plaintiff focused on three issues before the District Court: (1) the simplicity and size of the accounting error, and, relatedly, that the error violated a clear rule of the Generally Accepted Accounting Principles ("GAAP"); (2) the resignation of DeMedio and Smith, the company's CFOs; (3) and the remedial actions taken by USA Technologies after the September 30 Restatement. After thoroughly weighing these allegations, the District Court concluded that they amounted to little more than allegations of corporate mismanagement or possible negligence and therefore fell short of pleading a "strong inference" of scienter that is "at least" as cogent or compelling as Defendants' non-culpable explanation.

Two other procedural rulings are relevant to this appeal. First, the District Court denied leave to amend the Complaint in its opinion dismissing the Complaint. At oral argument, Plaintiff offered to plead additional facts that Defendants were motivated to conceal their bad debt because of a rising trend in bad debt as well as USA Technologies' business decision to shift its focus from one of its programs, called Jumpstart, to another program, called Quickstart. Noting that these factual allegations were for the most part already pled in the operative pleading, the District Court found these facts still failed to

6

show, with particularity, *why* defendants would purposefully disregard mistakes in USA Technologies' identification and accounting of bad debt only to admit their error shortly after in the September 30 Restatement.

Second, Plaintiff moved for relief from this Order and for leave to file a Second Amended Class Action Complaint under Federal Rule of Civil Procedure 60(b)(2) and 60(b)(6). He claimed to have found "new evidence" that supported scienter, but the District Court denied relief, finding that this evidence was far from new and that Plaintiff had not demonstrated "reasonable diligence" in pursuing it. This timely appeal followed.

## II.[3]

Plaintiff raises challenges to each of the above rulings. We address them in turn.

### A. Motion to Dismiss[4]

First, Plaintiff asserts the District Court improperly ruled that Plaintiff failed to plead scienter.

### 1.

To sufficiently plead scienter under the heightened pleading rules of the Private Securities Litigation Reform Act ("PSLRA"), a complaint must state with particularity facts giving rise to a "strong inference" that the defendants acted with intent to deceive, manipulate, or defraud. 15 U.S.C. § 78u-4(b)(2)(A); *see Rahman v. Kid Brands, Inc.*,

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1337. We have jurisdiction under 28 U.S.C § 1291.

[4] We exercise plenary review over the District Court's Order to grant a Rule 12(b)(6) motion to dismiss. *See In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 277 (3d Cir. 2010).

736 F.3d 237, 241–42 (3d Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)).  A "strong inference" of scienter exists "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs*, 551 U.S. at 324.  To support the inference, Plaintiff may rely on facts that show motive and opportunity to commit fraud, or otherwise, "facts constituting circumstantial evidence of either reckless or conscious behavior."  *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 530 (3d Cir. 1999) (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 269 (2d Cir. 1993)).

Because Plaintiff attempts to show scienter via the latter prong, we bear in mind that recklessness in the securities context requires proof of conduct "involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care."  *In re Advanta*, 180 F.3d at 535 (quoting *McLean v. Alexander*, 599 F.2d 1190, 1197 (3d Cir. 1979)); *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004).  The defendant's conduct—the false or misleading statements made—must "present[] a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."  *In re Advanta*, 180 F.3d at 535 (quoting *McLean*, 599 F.2d at 1197).  In analyzing scienter, moreover, we consider "not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged."  *Tellabs*, 551 U.S. at 314.  With these principles in mind, we turn to Plaintiff's arguments on appeal.

**2.**

8

Plaintiff relies almost entirely on the same allegations presented to the District Court in support of scienter.[5] Defendants counter on appeal that the failure to properly identify and account for bad debt at most was the result of negligence. After reviewing the entire Complaint and record, we concur with the judgment of the District Court that, even when taken together, Plaintiff's allegations do not establish a "strong inference" that Defendants intended to deceive or manipulate investors.

Plaintiff's scienter arguments boil down to the assertion that Defendants must have known about the unreported and misclassified bad debt and thus knowingly published the false September 10 Press Release, given their position at the company, the obvious nature of the error, and the subsequent actions to remediate. We have noted before the difficulty of establishing a "they-must-have-known" type inference such as this. *See In re Advanta*, 180 F.3d at 539; *see also In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 153 (3d Cir. 2004). That Defendants were in top positions at USA Technologies, alone, is not enough. *See In re Advanta*, 180 F.3d at 539 ("Generalized imputations of knowledge do not suffice, regardless of the defendants' positions within

---

[5] Specifically, Plaintiff highlights, in support: (1) Defendants' failure to write off an untold number of collectible accounts; (2) that the write-offs occurred in the fourth quarter only; (3) that Defendants' initial presentation of the bad debt expense was understated by over 900% relative to past estimates; (4) that Defendants had access to the underlying bad debt expense data for roughly two and a half months before announcing it publicly; (5) that the underlying bad expense data was "critically important" to Defendants given efforts to transition company business back to Quick Start accounts; and (6) both DeMedio and Smith, former CFOs, "resigned within weeks of the restatement." Appellant Br. 28.

the company."). Instead, in the context of recklessness, Plaintiff's facts must add up to a "cogent" inference that the danger of misleading investors was either actually "known" by Defendants or "*so obvious* that [they] must have been aware of it." *Id*. (emphasis added). The facts adduced do not.

We begin by noting that the Complaint is devoid of any allegations that suggest Defendants regularly dealt with bad debt or otherwise had reason to audit small-balance customer accounts. Plaintiff emphasizes the size and simplicity of the error, namely that the September 10 Press Release understated the actual value of bad debt by 900%.[6] An error of this magnitude, they imply, could not possibly have escaped Defendants' notice. But in context, as the District Court aptly noted, "the size of the bad debt expense increase is less than 4% and 2% of quarterly and year-end revenue amounts, respectively." JA13. While we do not suggest this change was insignificant—indeed it put USA Technologies, already operating on a thin margin, into the red for Q4 FY2015— we nonetheless agree that "the size of the violation, when compared to the complete financial picture of the Company . . . , represents a relatively small expense," and is therefore less indicative of scienter than Plaintiff suggests. JA13, 15.

Similarly, with respect to the error's supposed simplicity, we perceive nothing in the record that would suggest this error should have come to Defendants' attention. There were no allegations, for example, that the classification or accounting procedures

---

[6] On appeal, Plaintiff does not press the specific nature of the alleged GAAP violation as separately indicative of scienter.

had previously caused misstatements requiring correction. On this record, the more likely inference, given the small-balance nature of the accounts, is that lower staffers simply misclassified these bad debts or otherwise failed to deem them uncollectible, not that Defendants were aware of and were recklessly disregarding them. This is particularly so given the short timespan between misstatement and correction—a mere three weeks. Despite Plaintiff's arguments to the contrary, we see this allegation as supporting Defendants' non-culpable inference that Defendants realized the aggregate magnitude of the understatement in preparation for their annual SEC filings.

Plaintiff also argues that DeMedio's and Smith's terminations support a "cogent" inference of scienter. Resignations or terminations might form a "piece to the scienter puzzle," as the District Court noted, if, for example, a relatively contemporaneous and public firing is accompanied by extreme corporate punishment such as the denial of previously accrued benefits. *See Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 434 (5th Cir. 2002); *In re Intelligroup Sec. Litig.*, 527 F. Supp.2d 262, 347 (D. N.J. 2007). But DeMedio received a significant severance package and USA Technologies retained him for some time after his departure as a consultant. *See* JA17–18. Further, in stressing that Smith resigned "within weeks of the restatement" (it was actually four months) with relatively little severance, Plaintiff's argument fails to account for the fact that Smith had only been employed for ten days before the September 10 Press Release. Appellant Br. 28. While he did not receive as many benefits as DeMedio—probably due to his short tenure—USA Technologies still paid Smith's health insurance for a period of time after

11

his employment as well as his attorney's fees for negotiating his exit. *See* JA332-33.

These departures from the company, far from suspicious, add little to the scienter

inference.

Finally, we also agree with the District Court that USA Technologies' unprompted

admission of error in the September 30 Restatement and its later efforts to reformulate its

accounting practices do not nudge the Complaint any closer to adequately pleading

scienter. To the contrary, Defendants' speedy response suggests their actions were at

worst negligent. When Defendants became aware of the error in preparing the annual

Form 10-K, they acted immediately to rectify it.[7] Plaintiff's facts add up to corporate

mismanagement, as Defendants have maintained, *see e.g.,* JA107 ¶ 101 ("The material

weakness was identified late in the process of finalizing our 10-K."), but nothing more.

We will therefore affirm the District Court's dismissal of the Complaint on this ground.[8]

### B. Leave to Amend

Second, Plaintiff contends the District Court improperly denied leave to amend.

Although leave should be freely given "when justice so requires," *see* Fed. R. Civ. P.

---

[7] We similarly reject Plaintiff's argument that the District Court "fundamentally misunderstood the facts of the case" by failing to grasp that the alleged fraud was not just an accounting classification error but a wholesale obfuscation of the true scope of the bad debt on USA Technologies' books. Appellant Br. 34. The District Court, contrary to this characterization of its opinion, explicitly acknowledged Defendants had changed the company's "bad debt expense" from $47,184 to $479,184 in the September 30 Restatement, JA6, and understood the implication of this restatement to mean an "increase" in acknowledged bad debt, JA13.

[8] Consequently, we also affirm the District Court's dismissal of Plaintiff's Section 20(a) control-person claims.

15(a), "a District Court may deny leave to amend on the grounds that amendment would . . . be futile," *see Winer Family Trust v. Queen*, 503 F.3d 319, 330–31 (3d Cir. 2007) (quoting *In re Alpharma*, 372 F.3d at 153). We review a decision to deny leave to amend under the PSLRA for abuse of discretion. *See Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 163 (3d Cir. 2004).

We have little in the record to aid our analysis of Plaintiff's curative factual allegations because Plaintiff never filed a proposed amended complaint. Instead, at oral argument he proffered that, if allowed to amend, he would generally "explain the relationship between Quickstart [and Jumpstart] and [a trend in] rising bad-debt expense," JA409, in order to show that Defendants were motived to conceal their accounting errors to obtain a "clean audit opinion." Appellant Br. 38. Even after Plaintiff's lengthy briefing of the issue on appeal, we still do not see how this pleads, with particularity, an inference of scienter. For one, he does not allege facts that explain why this change in business focus would have alerted Defendants to the existence of previously undiscovered uncollectible customer accounts, let alone that its procedures were deficient in doing so in the ordinary course. Second, even if he did, Plaintiff does not persuasively explain why a motivation to secure a "clean audit opinion" would lead Defendants to knowingly misstate their bad debt figures on September 10 but then correct them nineteen days later. Absent some specific incentive to downplay the amount of uncollectible debt in the interim before the September 30 Restatement—such as the accruing of a performance-based stock option or a pending corporate transaction—these

13

facts do not plead scienter given this futility.  The District Court did not abuse its discretion in denying leave to amend on these grounds.[9]

### C.  Rule 60(b) Motion

Finally, Plaintiff argues that the District Court improperly denied him Rule 60(b) relief.  He claims, under Rule 60(b)(2) in particular, to have found newly discovered evidence from pleadings in a pending action by a customer of USA Technologies against the company itself (the "Arizona Action").  Those pleadings contained allegations that Defendants fraudulently inflated the number of devices connected to their network by asking customers to install duplicate devices at points of sale, facts which Plaintiff now argues also support scienter in his case.  He focuses on one particular allegation drawn from a third amended complaint filed a few weeks after the dismissal, which he asserts renders this evidence new.

But a single factual allegation appearing after dismissal does not render this material new within the meaning of Rule 60(b)(2).  *See Bohus v. Beloff*, 950 F.2d 919,

---

[9] Plaintiff also complains, the merits of his factual allegations notwithstanding, that it was an abuse of discretion to give him only one "attempt" at pleading scienter in a written complaint.  Appellant Br. 37.  We disagree.  Plaintiff actually had two such attempts: he filed his initial complaint in Oct. 2015 and an Amended Class Action Complaint in Jan. 2016.  He still then had three more months before oral argument to file a proposed amended complaint, but he did not do so.  In any event, the District Court considered Plaintiff's additional assertions after thoroughly probing them at oral argument, and, giving them every "benefit of [its] deference at this stage," rejected them on the merits.   JA20.  It was not an abuse of discretion to deny leave, even without the benefit of an additional written complaint, particularly given Plaintiff's somewhat contradictory position at oral argument that these facts were already pled in his Amended Class Action Complaint.

930 (3d Cir. 1991) (quoting *United States v. 27.93 Acres of Land*, 924 F.2d 506, 516 (3d Cir. 1991)) ("The term 'newly discovered evidence' refers to 'evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant.'"). The Arizona Action was filed in January 2015, and amended in April 2015, both well before this action was even filed. Those pleadings were sufficient in terms of their theory of fraud and level of detail to have put Plaintiff on notice as to the existence of facts that may have helped his case.

His argument fails for an even more fundamental reason. To prevail under Rule 60(b)(2), Plaintiff had to show that his newly identified material "could not have been discovered prior to trial through the exercise of reasonable diligence." *Id.* (citing *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir.1983)); *see also id.* (quoting *Plisco v. Union R. Co.*, 379 F.2d 15, 16, 17 (3d Cir. 1967)) ("The movant under Rule 60(b) 'bears a heavy burden,' which requires 'more than a showing of the potential significance of the new evidence.'"). Here, Plaintiff failed to provide any evidence detailing his efforts to ascertain facts underlying the Arizona Action at any time during this litigation—no public record searches, no legal database searches, nothing. Had he exercised a modicum of effort, we think he would have discovered this publicly filed Arizona action in time to develop these points in discovery in this matter. Instead, the record shows that Plaintiff rushed to file his Complaint, now only to regret the consequences of doing so. It was not an abuse of discretion to deny Rule 60(b) relief on this ground.

**III.**

15

For the foregoing reasons, we affirm.