J-S71017-17

2018 PA Super 41

| | |
|---|---|
| JUDITH BRAUN, DERIVATIVELY ON BEHALF OF USA TECHNOLOGIES, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| STEPHEN P. HERBERT, STEVEN D. BARNHART, JOEL BROOKS, ALVIN F. MOSCHNER, WILLIAM J. REILLY, JR., WILLIAM J. SCHOCH, DEBORAH G. ARNOLD, AND DAVID M. DEMEDIO, AND USA TECHNOLOGIES, INC., A PENNSYLVANIA CORPORATION | |
| Appellees | No. 1345 EDA 2017 |

Appeal from the Order Entered March 8, 2017
In the Court of Common Pleas of Chester County
Civil Division at No: 2016-05225-MJ

BEFORE:  PANELLA, STABILE, and PLATT,[*] JJ.

OPINION BY STABILE, J.:                    **FILED FEBRUARY 22, 2018**

Appellant, Judith Braun, Derivatively on Behalf of USA Technologies, Inc., appeals from the March 8, 2017 order sustaining the preliminary objections of Appellees, Stephen P. Herbert, Steven D. Barnhart, Joel Brooks, Alvin F. Moschner, William J. Reilly, Jr., William J. Schoch, Deborah G. Arnold, and David M. DeMedio, and USA Technologies, Inc., a Pennsylvania corporation, (collectively "Appellees").   We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On June 1, 2016, Appellant filed this shareholder derivative action against Appellees alleging breach of fiduciary duties. The trial court provided the following summary of the facts:

[USA Technologies, Inc. ('USAT')] is a Pennsylvania corporation headquartered in Malvern, Pennsylvania that provides cashless electronic payment technology, telemetry and other services to customers primarily in small ticket, unattended point-of-sale ('POS') markets such as food and beverage vending, commercial laundry, amusement and arcade, kiosks, taxicabs and other transportation. USAT's service enables customers to buy or lease POS electronic payment devices, and to process credit and debit card and mobile payments using USAT's software and payment processing services. USAT has been publicly traded on the NASDAQ exchange since 2007.

On September 10, 2015, the auditor reported to USAT management that it could not confirm the collectability of certain unpaid customer balances and disagreed with the amount of USAT's reserve for bad debt. USAT ultimately agreed to increase its reserves by $450,000 and to revise its prior press release to reflect that increase in bad debt expense. On September 28, 2015, USAT was advised that it needed to also consider whether internal control deficiencies amounted to a 'material weakness' that would be required to be disclosed in the Company's Form 10-K filing. Management subsequently agreed and on September 29, 2015, USAT filed a Notification of Late Filing on Form 12b-25 (the 'Notice') with the [Securities and Exchange Commission ('SEC')], explaining that the Company was unable to file its annual report (its 2015 Form 10-K) on time.

On September 30, 2015, after USAT's auditors had confirmed to its Audit Committee that they were now comfortable with USAT's reserves and financial statement, USAT's delayed Form 10-K was filed with the SEC.

On October 1, 2015, USAT as well as [Stephen P.] Herbert and [David M.] DeMedio were named as defendants in a putative securities fraud class action captioned *Steven P. Messner, et al v. USA Technologies, Inc. et al,* Civil Action No. 15-5427 (E.D. Pa.).

The action was dismissed with prejudice on April 13, 2016, and is currently on appeal.[1]

On December 17, 2015, [Appellant] sent USAT's Board [a] demand letter requesting that it 'investigate, address, remedy, and commence proceedings against' certain of USAT's current and former officers and directors for breach of fiduciary duties and violations of applicable laws in connection with the material weaknesses in USAT's internal controls and certain fiduciaries' public statements.

On February 5, 2016, by unanimous written consent in lieu of a meeting, the Board adopted resolutions forming the [Special Litigation Committee ('SLC')], composed of outside directors Joel Brooks, CPA and William J. Reilly, Jr.  The SLC retained Abraham C. Reich and Gerald E. Arth of Fox Rothschild as its counsel for the investigation and analysis of the demand.

[…]

On July 15, 2016, the SLC issued its Report.  The SLC concluded that the claims made in the Demand were unwarranted and that bringing any derivative action would not be in the best interests of USAT.  On August 1, 2016, USAT's Board conducted a special meeting at which it adopted the findings and recommendations of the SLC.

Trial Court Opinion, 3/8/17, at 2 n.1 (pagination ours).

In summary, Appellee USAT failed to identify a large number of outstanding, uncollectible, small balance accounts.  USAT's auditors discovered the discrepancy and, at their behest, USAT increased its reserves for bad debt and correspondingly lowered its net income projections for fiscal year 2015.  The accounting error was concededly the result of a material weakness in USAT's internal controls.  Appellant's derivative action demanded

---

[1]  As we will discuss more fully in the main text, the Third Circuit affirmed dismissal of the federal suit.

that USAT pursue litigation against those allegedly responsible for the error, and USAT's board of directors rejected Appellant's demand.

On August 17, 2016, Appellees filed preliminary objections to Appellant's complaint based on the SLC's report and the USAT board's adoption of the SLC's findings and recommendations. On March 8, 2017, the trial court entered an order sustaining the preliminary objections. This timely appeal followed.

Appellant states the question involved as follows:

> Whether the trial court erred or abused its discretion when it granted [Appellees'] preliminary objections and concluded that the SLC was disinterested and independent, given that (1) the SLC consisted of only Audit Committee members—responsible for duties directly implicated by the wrongdoing to be investigated by the SLC; (2) the SLC members worked closely with the Company's former CFO, the sole person who was terminated as a result of the wrongdoing, yet the SLC members did not share any of the blame; and (3) the SLC members had long standing ties to the Company and the Audit Committee and other structural issues demonstrating that they could not exercise independent judgment under the circumstances?

Appellant's Brief at 4.

The trial court sustained Appellees' preliminary objections because it concluded that the business judgment rule protected USAT's rejection of Appellant's litigation demand.

> The business judgment rule insulates an officer or director of a corporation from liability for a business decision made in good faith if he is not interested in the subject of the business judgment, is informed with respect to the subject of the business judgment to the extent he reasonably believes to be appropriate under the circumstances, and rationally believes that the business judgment is in the best interests of the corporation.

***Cuker v. Mikalauskas***, 692 A.2d 1042, 1045 (Pa. 1997).  The ***Cuker*** Court

held that the business judgment rule applies in Pennsylvania.  ***Id.*** at 1046-

48.

> The business judgment rule reflects a policy of noninterference with business decisions of corporate managers, presuming that they pursue the best interests of their corporations, insulating such managers from second-guessing or liability for their business decisions in the absence of fraud or self-dealing or other misconduct or malfeasance.

***Id.*** at 1046.  "[I]f a court makes a determination that a business decision was

made under proper circumstances, however that concept is currently defined,

then the business judgment rule prohibits the court from going further and

examining the merits of the underlying business decision." ***Id.*** at 1048.  The

***Cuker*** Court defined the proper circumstances for a corporate board's decision

to reject a shareholder's litigation demand:

> Factors bearing on the board's decision will include whether the board or its special litigation committee was disinterested, whether it was assisted by counsel, whether it prepared a written report, whether it was independent, whether it conducted an adequate investigation, and whether it rationally believed its decision was in the best interests of the corporation (*i.e.*, acted in good faith).  If all of these criteria are satisfied, the business judgment rule applies and the court should dismiss the action.

***Id.*** at 1048.  Thus, if the business rule applies in this case, the trial court did

not err in dismissing Appellant's derivative action.  ***Id.***[2]

---

[2]  In addition, the ***Cuker*** Court adopted §§ 7.02-7.10 and 7.13 of the American Law Institute's ("ALI") Principles of Corporate Governance and published them as an appendix to its decision.  ***Cuker***, 692 A.2d at 1049-55.

We will not reverse an order sustaining preliminary objections unless the trial court abuses its discretion or commits an error of law. *Lemenestrel v. Warden*, 964 A.2d 902, 910 (Pa. Super. 2008), *appeal denied*, 983 A.2d 729 (Pa. 2009). As is evident in *Lemenestrel*, our review of the trial court's application of the business judgment rule requires analysis of evidence in addition to the complaint. *See id.* at 915-17. Thus, we will exercise plenary review.

Appellant's sole argument is that the two members of the SLC, Appellees Joel Brooks and William J. Reilly, were not disinterested and independent. The trial court found the following with regard to Brooks and Reilly:

> [T]wo of USAT's current outside directors, Joel Brooks, CPA and William J. Reilly, Jr. were appointed to serve as the members of the SLC with Mr. Brooks serving as the chair. Mr. Brooks is a certified public accountant and active member of the American Institute of Certified Public Accountants, who earned a degree in accounting from Rider University. Since May 2015, he has served as the Vice President, Finance for MeiraGTx Limited, a private biotechnology company. He previously served as the CFO, Treasurer and Secretary of Sevion Therapeutics, Inc., formerly known as Senesco Technologies, a biotechnology company whose shares are traded on the American Stock Exchange.
>
> Mr. Reilly served as President and Chief Executive Officer of Realtime Media, Inc., and in a progression of executive roles with

_____

We will cite sections of the ALI Principles rather than pages of the Atlantic Reporter and we will quote the principles as they appear in *Cuker*. Under the ALI Principles, a corporation may seek dismissal of an action against a director or senior executive where either the board or a committee, such as the SLC, determines that the action is contrary to the corporation's best interests. ALI Principles, § 7.07(a)(2) and § 7.08(a). Appellant does not argue that Appellees failed to follow the procedural requirements set forth in the ALI Principles.

- 6 -

Checkpoint Systems, Inc. He also has a background in public-company corporate governance, having formerly served on the board of directors of Veramark Technologies, Inc., prior to his current service on the boards of USAT and Agilence, Inc. In addition to his business and Board responsibilities, Mr. Reilly was elected to serve as a member of the Board of Supervisors of Thornbury Township, Pennsylvania.

Trial Court Opinion, 3/8/17, at 6 n.1 (pagination ours).

Section 7.09 of the ALI Principles of Corporate Governance[3] provides that a special litigation committee must consist of "two or more persons, no participating member of which was interested in the action, and should as a group be capable of objective judgment in the circumstances." ALI Principles of Corporate Governance, § 7.09(a)(1). The **Lemenestrel** Court held that "mere service on the board does not make the special litigation committee member 'interested.'" **Lemenestrel**, 964 A.2d at 919.

In **Lemenestrel**, the plaintiff shareholders alleged in their demand letter that the defendant directors engaged in self-serving acts that resulted in loss of value to the plaintiffs' stock. **Id.** at 908. The special litigation committee found no evidence of wrongdoing, but the committee members were named as defendants in the resulting derivative action. **Id.** at 909. In analyzing the plaintiffs' claim that the committee members were not disinterested, this Court relied on § 1.23 of the ALI Principles, defining an "interested" director. In pertinent part, § 1.23 provides that a director, if

---

[3] As noted above, the **Cuker** Court adopted portions of the ALI Principles.

named as a defendant, is interested unless the allegations are "based only on the fact that the director approved of or acquiesced in the transaction or conduct that is the subject of the action," and the complaint "does not otherwise allege with particularity facts that, if true, raise a significant prospect that the director would be adjudged liable to the corporation or its shareholders." *Id.* at 919, (quoting ALI Principles, § 1.23(c)(2)). In *Lemenestrel*, the trial court found that the members of the litigation committee had no direct involvement in the alleged self-dealing of several board members. *Id.* at 921-22. The trial court also found that the friendship between the wife of a committee member and the wife of a defendant director (the women had attended college together and kept up occasional contact) did not render the committee member interested within the meaning of § 1.23. *Id.* at 921-22. The record supported the trial court's findings, and this Court affirmed dismissal of the action. *Id.*

The instant facts have already been litigated in federal court. *Fain v. USA Technologies, Inc.*, 707 Fed. Appx. 91 (3d Cir. 2017). *Fain* does not control the instant matter, as it was decided under federal law and the Third Circuit was not considering the propriety of the SLC members under *Cuker*, but we will rely on the Third Circuit's analysis of the facts as persuasive authority. In *Fain*, the plaintiff claimed that USAT "fraudulently understated the amount of 'bad debt' on [USAT's] balance sheet in order to artificially prop up [USAT's] perceived financial health." *Id.* at 94. The Third Circuit noted

that the error was relatively small—4% of quarterly and 2% of year-end revenue. *Id.* at 97. The Third Circuit found the small size of the error not to be indicative of the scienter required under federal law. *Id.* "On this record, the most likely inference, given the small-balance nature of the accounts, is that lower staffers simply misclassified these bad debts or otherwise failed to deem them uncollectible, not that Defendants were aware of and were recklessly disregarding them." *Id.* "This is particularly so given the short time span between misstatement and correction—a mere three weeks." *Id.*

We find the Third Circuit's analysis instructive because it illustrates *why* mere service on a board does not render an SLC member interested. Simply put, the extent of a director's knowledge of, or complicity in, a disputed act is not self-evident based on his or her status as a director. A director, particularly an outside director, is not necessarily aware of mistakes that occur at lower levels of the company. To this end, the ALI Principles require a plaintiff to allege with particularity the wrongdoing at issue. Section 7.04 provides:

> The complaint shall plead **with particularity** facts that, if true, raise a significant prospect that the transaction or conduct complained of did not meet the applicable requirements of Parts IV (Duty of Care and the Business Judgment Rule), V (Duty of Fair Dealing), or VI (Role of Directors and Shareholders in Transactions in Control and Tender Offers), in light of any approvals of the transaction or conduct communicated to the plaintiff by the corporation.

ALI Principles of Corporate Governance, § 7.04(a)(1). More to the point in this case, a defendant director is not interested in the disputed conduct if the

plaintiff "does not otherwise allege **with particularity** facts that, if true, raise a significant prospect that the director would be adjudged liable to the corporation or its shareholders." **Lemenestrel**, 964 A.2d at 919 (quoting § 1.23(c)(2)(B) of the ALI Principles) (emphasis added).

In addition to the facts set forth in the trial court's opinion, Appellant notes that Brooks and Reilly were members of USAT's audit committee and Brooks was the longest-standing member of USAT's board and chairman of the audit committee. Appellant alleged that Brooks "knowingly or recklessly made improper statements in [USAT's] public filings concerning [USAT's] internal controls and bad debt expenses. In addition, defendant Brooks knowingly or recklessly utterly failed to implement an appropriate and adequate internal control system." Complaint 6/1/16, at ¶ 12. The complaint repeats identical allegation against Reilly. *Id.* at ¶ 14. Appellant argues that, because the audit committee was responsible for overseeing financial integrity and internal controls, neither SLC member was disinterested. Citing USAT's 2014 annual report, Appellant notes that USAT's audit committee is responsible for "evaluating [USAT's] accounting principles … and reviewing the adequacy and effectiveness of [USAT's] internal controls." *Id.* at ¶¶ 23-24; Appellant's Brief at 17. Likewise, the audit committee was required to review the quarterly reports with USAT's independent auditor and review disclosures from USAT's CEO and CFO relevant to USAT's annual report. *Id.* at ¶ 24. Appellant also notes that USAT's audit committee reviewed the company's bad

debt allowance during its meetings. Appellant's Brief at 18. Appellant believes Brooks and Reilly used their positions on the SLC to insulate themselves from scrutiny and shift blame to USAT's former CFO.[4] Appellant claims that the wrongdoing alleged in her demand letter suggests that the audit committee failed to do its job. *Id.* at 19.

Nowhere does Appellant allege with any particularity that either Brooks or Reilly is liable to the corporation as a result of their service on USAT's board and audit committee. Rather, Appellant seemingly relies on what she believes Brooks and Reilly must have known. Nothing in the record indicates that either member of the SLC helped devise USAT's internal controls or was personally responsible for the misstatement of bad debt. The *Fain* Court's analysis undermines Appellant's theory insofar as it establishes that the mistakes at issue most likely were not within the immediate purview of an outside director. Regardless of the *Fain* Court's analysis, Appellant made no

---

[4] Appellant criticizes the trial court's reliance on § 1.23 of the ALI Principles, claiming that the trial court conflated Appellant's arguments about the SLC's interest in the underlying conduct and the SLC's lack of independence. Appellant fails to develop any legal argument as to the distinction between "disinterested" and "independent," as those terms are used in *Cuker*. In any event, we believe the trial court correctly analyzed whether Brooks and Reilly were disinterested. In arguing that Brooks and Reilly insulated themselves from scrutiny, Appellant clearly argues that they were not disinterested. Appellant does not assert that Brooks and Reilly, in their roles as SLC members, were under the control of nonmembers and thus lacking in independence. We are cognizant that the *Cuker* Court did not adopt § 1.23, but *Lemenestrel* cited that section in analyzing the disinterestedness of SLC members. *Lemenestrel* is binding on the trial court and three-judge panels of this Court.

- 11 -

allegations and produced no evidence to support, with any particularity, her claim to the contrary. Furthermore, a passage in USAT's audit committee charter substantially undermines Appellant's claim: "it is not the duty of the Audit Committee to plan or conduct audits or to determine that [USAT's] financial statements are complete and accurate and are in accordance with generally accepted accounting principles and applicable rules and regulations. These are the responsibilities of management and the independent auditor." Appellees' Memorandum of Law in Support of Preliminary Objections, 8/17/16, at Exhibit E, p. 5. In summary, Appellant has failed to allege with particularity how Brooks and Reilly were not disinterested and independent, and therefore she has failed to establish any fraud, malfeasance, or self-dealing that would preclude application of the business judgment rule. *Cuker*, 692 A.2d at 1046, 1048.

Appellant also argues that Brooks and Reilly have close ties to USAT's CFO, Appellee David M. DeMedio, who was terminated because of the accounting mistake at issue. Appellant argues that Brooks and Reilly regularly interacted with DeMedio, and that the three men shared responsibility for the accounting errors. As noted above, Appellant argues that Brooks and Reilly used their positions on the SLC to protect themselves and blame DeMedio. Once again, we conclude that Appellant has failed to allege with any particularity that the relationship between Brooks, Reilly, and DeMedio precluded the former two from serving as disinterested SLC members. We

find it unsurprising that a company's outside directors and audit committee members would maintain a relationship with its CFO. That, without more, does not preclude the outside directors from serving as disinterested and independent SLC members. Again, we discern no error in the trial court's finding that Brooks and Reilly were disinterested and independent, and that Appellant failed to establish any fraud, malfeasance, or self-dealing that would preclude application of the business judgment rule.

For all of the foregoing reasons, we conclude that USAT's decision to reject Appellant's litigation demand is protected by the business judgment rule, and we affirm the order sustaining Appellees' preliminary objections.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/18

- 13 -